**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

NATALIA JONES,

    Plaintiff,                                 CASE NO.: 2:26-cv-01602

v.

FLORIDA WINDOW GEEKS, LLC,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, NATALIA JONES, (hereinafter "Plaintiff" or "Ms. Jones"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, FLORIDA WINDOW GEEKS, LLC (hereinafter "Defendant" or "FWG"), and alleges:

## JURISDICTION AND VENUE

1. This is a civil action for damages under Title VII of the Civil Rights Act of 1964, as amended, ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), and the Florida Civil Rights Act of 1992 ("FCRA").

2. This Court has jurisdiction over Plaintiff's Title VII and ADA claims under 28 U.S.C. §§ 1331 and 1343.

3. This Court has jurisdiction over Plaintiff's FCRA claims under 28 U.S.C. § 1367 as all claims arise out of the same nexus of operative facts.

4.      Venue is appropriate in the Middle District of Florida because the events giving rise to the cause of action occurred in Lee County, Florida, which is located in the Middle District of Florida.

## PARTIES

5.      Plaintiff, NATALIA JONES, is a resident of Lee County, Florida, which is located in the Middle District of Florida.

6.      Defendant, FLORIDA WINDOW GEEKS, LLC, is a Florida Limited Liability Company principally located at 2110 Pondella Road, Cape Coral, Florida 33909.

## ADMINISTRATIVE PREREQUISITES

7.      Ms. Jones has satisfied all prerequisites necessary to bring this cause of action.

## ALLEGATIONS RELATED TO TITLE VII AND FCRA CLAIMS RESULTING IN GENDER DISCRIMINATION

8.      Natalia Jones is a forty-four-year-old female.

9.      On April 22, 2024, Ms. Jones started working at FWG as a Project Manager for construction projects.

10.      As part of her job duties, FWG tasked Ms. Jones with oversight of various matters including project sales to project disclosures, ensuring the timeliness of projects at different stages, and client service management.

11.      In and around May 2024, Ms. Jones noticed that Ben Quimby (Male Service Manager) started to become very friendly with her and regularly accompanied

2

her to work events. Mr. Quimby made it clear through his behavior that he was attracted to her.

12.    During this time frame, Ms. Jones was friendly with Mr. Quimby but didn't reciprocate signs of any romantic interest.

13.    In late May 2024, Mr. Quimby stopped collaborating with Ms. Jones at work, which directly impacted her ability to fulfill her responsibilities.

14.    As a result, Ms. Jones felt that she had to placate Mr. Quimby in order to avoid retaliation and protect her position.

15.    In June 2024, Ms. Jones began a personal relationship with Mr. Quimby under circumstances where she felt it was necessary to preserve her job.

16.    Ms. Jones did not genuinely desire a romantic relationship but felt forced to go along with Mr. Quimby's advances due to the imbalance of power and fear of professional consequences.

17.    On October 23, 2024, Ms. Jones ended the relationship and informed Mr. Quimby that they should maintain a strictly professional dynamic moving forward.

18.    Following this, Mr. Quimby again ceased all communication with Ms. Jones, which made it extremely difficult for Ms. Jones to perform her job.

19.    Despite Ms. Jones' efforts to engage professionally—leaving Post-it notes regarding projects and creating task lists in the shared system—Mr. Quimby refused to acknowledge or respond to her communications.

3

20. In early November 2024, Ms. Jones informed Amber Miller (Female General Manager) that Mr. Quimby kept ignoring her and that she couldn't complete her work without his feedback.

21. In response, Ms. Miller dismissed Ms. Jones' complaint and told her, "Oh he has a crush on you. He'll get over it."

22. However, Mr. Quimby continued to ignore Ms. Jones, which further jeopardized her job stability.

23. Ms. Jones then created a list of outstanding projects and sent this to Anel Perez, another employee who also worked with Mr. Quimby, in order to direct his attention to pending tasks.

24. In December 2024, Ms. Jones asked to work remotely from December 6, 2024, through January 23, 2025, and was allowed to do so.

25. While Ms. Jones worked remotely, Joe Leloup (Male Owner) significantly reduced her hours from a forty-hour workweek to a twenty-two-hour workweek, which reduced her weekly wages by half.

26. Meanwhile, the installers got large bonuses, and Mr. Quimby got a Christmas bonus and a mid-year bonus. In contrast, Ms. Jones received only a $500.00 bonus at the end of 2024, which Ms. Miller described as "a small bonus" compared to those given to other FWG employees.

27. On January 24, 2025, Ms. Jones returned to work in person and discovered that Mr. Quimby had instructed everyone on his team to stop

communicating with her, which made it impossible for her to do her job as communication with his team was a crucial part of her job.

28.    Shortly thereafter, Ms. Jones complained to Mr. Leloup that Mr. Quimby and his entire team refused to talk or work with her, which ultimately hurt the projects, the company's reputation, and her reputation with the clients.

29.    However, Mr. Leloup did nothing to address Ms. Jones' complaint. Mr. Leloup knew that Mr. Quimby was doing this because Ms. Jones had broken up with him.

30.    In and around April 2025, FWG installed a new Standard Operating Procedure (SOP) for certain clients, which required Ms. Jones to call certain clients within 24 hours of the beginning of their projects.

31.    Since Mr. Quimby and his installers refused to communicate with her, Ms. Jones had to call clients without knowing the status of client projects.

32.    This caused certain clients to be irritated with her because she could not resolve the project issues confronted by those clients.

33.    On April 30, 2025, FWG was scheduled to perform a reinstallation to correct a previous mistake for a long-time client. As a result of the mistake, Ms. Jones recommended that Mr. Leloup meet with the client in person to amend the relationship.

34.    At the time of her recommendation, Ms. Jones was unaware of another major reinstallation error, as Mr. Quimby's installers had refused to communicate it to her.

35.     However, Ms. Jones discovered the error on the same day that Mr. Leloup was scheduled to meet with the client. As such, Ms. Jones advised Mr. Leloup not to meet with the client as the team needed to approach the client with solutions rather than excuses.

36.     On the same day, management held a meeting with Ms. Jones to address the cancellation of the client meeting. Mr. Leloup, Ms. Miller, Ms. Perez, Marcus Rice (Sales Manager), and Mr. Quimby were all present for this meeting.

37.     During the meeting, management told Ms. Jones that her last-minute cancellation of the meeting was not okay because she should have known about the issue with the reinstallation much earlier.

38.     In response, Ms. Jones informed management that she couldn't have known about the issue sooner because Mr. Quimby and his team of installers intentionally withheld the information from her. Ms. Jones also stated that "If this was going to continue, I feel that it is in my best interest to file with the state."

39.     At that point, Mr. Rice said, "If it's that bad why didn't you quit?" Mr. Rice also stated, "Romantic relationships aren't for the workplace."

40.     Mr. Leloup then told Ms. Jones to "Go pack your stuff and go enjoy your day elsewhere," suggesting that he was terminating her from her employment.

41.     Ms. Jones then packed her stuff and left the building assuming that she had been fired.

42.     An hour later, Ms. Jones received a text message from a coworker stating, "dang I'm going to miss you," further leading her to believe that she had been terminated.

43.     At 4:30 p.m. that day, Ms. Jones received an email from Mr. Leloup asking her to take another day off as she had been placed on paid administrative leave.

44.     Another email stated that the company wanted to get a written statement from her with a deadline for the statement being Friday May 2, 2025, at 4:00 p.m.

45.     In response, Ms. Jones requested a five-day extension to the Friday deadline to manage her mental health.

46.     However, FWG denied her request for the extension and demanded that she write a statement by the deadline.

47.     On May 7, 2025, FWG terminated Ms. Jones from her position.

### ALLEGATIONS RELATED TO ADA AND FCRA CLAIMS RESULTING IN DISABILITY DISCRIMINATION

48.     Ms. Jones suffers from Post Traumatic Stress Disorder (PTSD) which affects her concentration and ability to regulate her emotions during high stress situations.

49.     In November of 2024, Ms. Jones notified FWG that she had been diagnosed with PTSD and asked if the company would instruct employees not to slam doors because that was a trigger for her PTSD.

50. After the events of April 30, 2025, Mr. Leloup asked Ms. Jones to provide a written statement regarding what had happened with regard to her allegations of sexual harassment against Mr. Quimby.

51. Mr. Leloup advised Ms. Jones that the report was due by 4:00 pm on May 2, 2025.

52. On May 2, 2025, at 11:32 am, Ms. Jones emailed Mr. LeLoup and asked for five business days (until May 9, 2025) to prepare the report as an accommodation for her PTSD, so that she could schedule a meeting with a mental health professional.

53. Ms. Jones' request was denied, and FWG terminated her after she did not submit the report on May 2, 2025, at 4:00 pm.

54. FWG did not ask Ms. Jones to provide a note from a health care provider before terminating her.

55. Ms. Jones has incurred costs and attorney's fees in bringing this action.

**COUNT I**
**Violation of Title VII of the Civil Rights Act of 1964**
**Discrimination Resulting in Quid-Pro-Quo Sexual Harassment**

56. Plaintiff, NATALIA JONES, re-alleges and incorporates the allegations put forth in paragraphs one (1) through forty-seven (47) and paragraph fifty-five (55) as if set forth herein in full.

57. Ms. Jones is a woman and as such, is protected from discrimination on the basis of her gender.

8

58.    At all material times, Ms. Jones was an employee, and the Defendant was her employer covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

59.    Ms. Jones was qualified for the position she held with the Defendant.

60.    Ms. Jones' manager sexually harassed her based on her gender.

61.    Ben Quimby (Service Manager) participated in quid-pro-quo sexual harassment when he interfered with Ms. Jones' ability to do her job when she turned down his advances.

62.    Specifically, Mr. Quimby refused to provide Ms. Jones with information critical for her performance of her job. He also refused to speak to her or respond to her text messages or emails about any projects for the company unless it related to his desires for an intimate relationship with her. Mr. Quimby's behavior in this regard made it impossible for Ms. Jones to perform her job.

63.    Although Ms. Jones made several complaints to Amber Miller and Joe Leloup about Mr. Quimby's sexual harassment, Defendant did nothing to address these complaints.

64.    Defendant knew or should have known of the sexual harassment and failed to take prompt remedial action.

65.    Defendant's actions in subjecting Ms. Jones to quid-pro-quo sexual harassment because of her gender were reckless, willful, and malicious.

66.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered a loss of employment, loss of compensation, loss of privileges and benefits,

9

and has suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, and damage to her professional reputation. Plaintiff has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Ms. Jones respectfully invokes the remedial powers of this Court, as provided in Title VII, and prays for a judgment:

A.      Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Ms. Jones;

B.      Back pay;

C.      Compensatory damages against Defendant;

D.      Prejudgment interest;

E.      Damages in compensation for the value of employment benefits she would have received but for the discriminatory acts and practices of Defendant;

F.      Attorney's fees and costs; and

G.      For such other relief as the Court deems just and equitable.

**<u>COUNT II</u>**
**Violation of Title VII of the Civil Rights Act of 1964**
**Discrimination Resulting in Adverse Employment Action**
**On the Basis of Gender**

67.      Plaintiff, NATALIA JONES, re-alleges and incorporates the allegations put forth in paragraphs one (1) through forty-seven (47) and paragraph fifty-five (55) as if set forth herein in full.

68.      Ms. Jones is protected from discrimination on the basis of her gender.

10

69. At all material times, Ms. Jones was an employee, and the Defendant was her employer covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

70. Ms. Jones was qualified for the position she held with the Defendant.

71. Defendant subjected Ms. Jones to adverse employment action based on her gender.

72. From December 6, 2024, through January 23, 2025, Defendant significantly reduced Ms. Jones' hours from a forty-hour workweek to a twenty-two-hour workweek because of her gender.

73. On May 7, 2025, Defendant terminated Ms. Jones from her position because of her gender.

74. Defendant's actions in reducing Ms. Jones' hours and terminating her from her position because of her gender were reckless, willful, and malicious.

75. Defendant's actions, as set forth above, constitute intentional discrimination on the basis of Plaintiff's sex in violation of Section 703 of Title VII, 42 U.S.C. §2000e-2.

76. As a direct and proximate result of Defendant's actions, Plaintiff has suffered a loss of employment, loss of compensation, loss of privileges and benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, and damage to her professional reputation. Plaintiff has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Ms. Jones respectfully invokes the remedial powers of this Court, as provided in Title VII, and prays for a judgment:

A.    Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Ms. Jones;

B.    Back pay;

C.    Compensatory damages against Defendant;

D.    Prejudgment interest;

E.    Damages in compensation for the value of employment benefits she would have received but for the discriminatory acts and practices of Defendant;

F.    Attorney's fees and costs; and

G.    For such other relief as the Court deems just and equitable.

**COUNT III**
**Violation of Title VII of the Civil Rights Act of 1964**
**Retaliation for Engaging in Protected Activity**
**Resulting in Adverse Employment Action**

77.    Plaintiff, NATALIA JONES, re-alleges and incorporates the allegations put forth in paragraphs one (1) through forty-seven (47) and paragraph fifty-five (55) as if set forth herein in full.

78.    Ms. Jones is a woman and as such, is protected from discrimination on the basis of her gender.

79.    In November 2024, Plaintiff engaged in protected activity under Title VII when she complained of sexual harassment to Amber Miller.

12

80. From December 6, 2024, through January 23, 2025, Defendant significantly reduced Ms. Jones' hours from a forty-hour workweek to a twenty-two-hour workweek because she complained about sexual harassment.

81. In and around January 24, 2025, Plaintiff complained about sexual harassment to Joe Leloup.

82. Defendant failed to conduct an adequate investigation regarding Plaintiff's complaints.

83. Instead, Defendant retaliated against Plaintiff for engaging in these protected activities by terminating her from her position shortly thereafter.

84. Defendant's actions were willful and done with malice.

85. As a direct, proximate and foreseeable result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, loss of benefits, inconvenience, embarrassment, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other tangible and intangible damages. These damages have occurred in the past, are permanent and continuing.

**WHEREFORE**, Ms. Jones respectfully invokes the remedial powers of this Court, as provided in Title VII, and prays for a judgment:

A. Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Ms. Jones;

B. Back pay;

C. Compensatory damages against Defendant;

D.    Prejudgment interest;

E.    Damages in compensation for the value of employment benefits she would have received but for the discriminatory acts and practices of Defendant;

F.    Attorney's fees and costs; and

G.    For such other relief as the Court deems just and equitable.

## COUNT IV
### Violation of the Florida Civil Rights Act
### Discrimination Resulting in Quid-pro-quo Sexual Harassment

86.    Plaintiff, NATALIA JONES, re-alleges and incorporates the allegations put forth in paragraphs one (1) through forty-seven (47) and paragraph fifty-five (55) as if set forth herein in full.

87.    Ms. Jones is a woman and as such, is protected from discrimination on the basis of her gender.

88.    At all material times, Ms. Jones was an employee, and the Defendant was her employer covered by and within the meaning of the Florida Civil Rights Act of 1992 ("FCRA").

89.    Ms. Jones was qualified for the position she held with the Defendant.

90.    Ms. Jones' manager sexually harassed her based on her gender.

91.    Ben Quimby (Service Manager) participated in quid-pro-quo sexual harassment when he interfered with Ms. Jones' ability to do her job when she turned down his advances.

92.    Specifically, Mr. Quimby refused to provide Ms. Jones with information critical for her performance of her job. He also refused to speak to her or respond to

14

her text messages or emails about any projects for the company unless it related to his desires for an intimate relationship with her. Mr. Quimby's behavior in this regard made it impossible for Ms. Jones to perform her job.

93. Although Ms. Jones made several complaints to Amber Miller and Joe Leloup about Mr. Quimby's sexual harassment, Defendant did nothing to address these complaints.

94. Defendant knew or should have known of the sexual harassment and failed to take prompt remedial action.

95. Defendant's actions in subjecting Ms. Jones to quid-pro-quo sexual harassment because of her gender were reckless, willful, and malicious.

96. As a direct and proximate result of Defendant's actions, Plaintiff has suffered a loss of employment, loss of compensation, loss of privileges and benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, and damage to her professional reputation. Plaintiff has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Ms. Jones respectfully invokes the remedial powers of this Court, as provided in the FCRA, and prays for a judgment:

A. Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Ms. Jones;

B. Back pay;

C. Compensatory damages against Defendant;

D. Prejudgment interest;

15

E.    Damages in compensation for the value of employment benefits she would have received but for the discriminatory acts and practices of Defendant;

F.    Attorney's fees and costs; and

G.    For such other relief as the Court deems just and equitable.

## COUNT V
### Violation of the Florida Civil Rights Act
### Discrimination Resulting in Adverse Employment Action
### on the Basis of Gender

97.    Plaintiff, NATALIA JONES, re-alleges and incorporates the allegations put forth in paragraphs one (1) through forty-seven (47) and paragraph fifty-five (55) as if set forth herein in full.

98.    Ms. Jones is a woman and as such, is protected from discrimination on the basis of her gender.

99.    At all material times, Ms. Jones was an employee, and the Defendant was her employer covered by and within the meaning of the Florida Civil Rights Act of 1992 ("FCRA").

100.    Ms. Jones was qualified for the position she held with the Defendant.

101.    Defendant subjected Ms. Jones to adverse employment action based on her gender.

102.    From December 6, 2024, through January 23, 2025, Defendant significantly reduced Ms. Jones' hours from a forty-hour workweek to a twenty-two-hour workweek because of her gender.

103. On May 7, 2025, Defendant terminated Ms. Jones from her position because of her gender.

104. Defendant's actions in reducing Ms. Jones' hours and terminating her from her position because of her gender were reckless, willful, and malicious.

105. Defendant's actions, as set forth above, constitute intentional discrimination on the basis of Plaintiff's sex in violation of the FCRA.

106. As a direct and proximate result of Defendant's actions, Plaintiff has suffered a loss of employment, loss of compensation, loss of privileges and benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, and damage to her professional reputation. Plaintiff has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Ms. Jones respectfully invokes the remedial powers of this Court, as provided in the FCRA, and prays for a judgment:

A. Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Ms. Jones;

B. Back pay;

C. Compensatory damages against Defendant;

D. Prejudgment interest;

E. Damages in compensation for the value of employment benefits she would have received but for the discriminatory acts and practices of Defendant;

F. Attorney's fees and costs; and

G. For such other relief as the Court deems just and equitable.

## COUNT VI
### Violation of the FCRA
### Retaliation for Engaging in Protected Activity
### Resulting in Adverse Employment Action

107. Plaintiff, NATALIA JONES, re-alleges and incorporates the allegations put forth in paragraphs one (1) through forty-seven (47) and paragraph fifty-five (55) as if set forth herein in full.

108. Plaintiff is a member of a protected class under the FCRA.

109. In November 2024, Plaintiff engaged in protected activity under Title VII when she complained of sexual harassment to Amber Miller.

110. From December 6, 2024, through January 23, 2025, Defendant significantly reduced Ms. Jones' hours from a forty-hour workweek to a twenty-two-hour workweek because she complained about sexual harassment.

111. In and around January 24, 2025, Plaintiff complained about sexual harassment to Joe Leloup.

112. Defendant failed to conduct an adequate investigation regarding Plaintiff's complaints.

113. Instead, Defendant retaliated against Plaintiff for engaging in these protected activities by terminating her from her position shortly thereafter.

114. Defendant's actions were willful and done with malice.

115. As a direct, proximate and foreseeable result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, loss of benefits, inconvenience, embarrassment,

18

mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other tangible and intangible damages. These damages have occurred in the past, are permanent and continuing.

**WHEREFORE**, Ms. Jones respectfully invokes the remedial powers of this Court, as provided in the FCRA, and prays for a judgment:

A.      Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Ms. Jones;

B.      Back pay;

C.      Compensatory damages against Defendant;

D.      Prejudgment interest;

E.      Damages in compensation for the value of employment benefits she would have received but for the discriminatory acts and practices of Defendant;

F.      Attorney's fees and costs; and

G.      For such other relief as the Court deems just and equitable.

### COUNT VII
**Violation of the ADA**
**For Failure to Provide a Reasonable Accommodation**
**& Engage in the Interactive Process in Good Faith**

116.    Plaintiff, NATALIA JONES, incorporates by reference the allegations set forth in paragraphs one (1) through ten (10) and paragraphs forty-four (44) through fifty-five (55) as if set forth herein in full.

19

117.    The Americans with Disabilities Act, 42 U.S.C. §12101, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based on that person's disability or perceived disability.

118.    The ADA requires employers to grant reasonable accommodations to the known mental or physical limitations of an otherwise qualified employee unless the employer can show the accommodation would impose an undue hardship on the operation of its business.

119.    When an employee requests an accommodation, this triggers an interactive process to determine the appropriate accommodation in which the employee and employer must participate. 29 C.F.R. § 1630.2(o)(3).

120.    An employer's failure to engage in the interactive process in good faith is liable for disability discrimination when there is a breakdown in communication that blocks or delays an accommodation.

121.    During her employment with Defendant, Ms. Jones suffered from Post Traumatic Stress Disorder.

122.    Plaintiff is a member of a protected class and protected by the ADA from discrimination based on her disability or perceived disability.

123.    Defendant is an "employer" within the meaning of the ADA during the time of these allegations.

124.    Plaintiff has satisfied all procedural and administrative requirements set forth in the ADA.

20

125. Ms. Jones was qualified for her job and was able to perform all essential functions of her job.

126. Defendant failed to provide a reasonable accommodation and failed to engage in the interactive process in good faith, thus leading to Ms. Jones' termination.

127. The discriminatory conduct described herein demonstrates Mr. Leloup's failure to provide Ms. Jones with a reasonable accommodation and his refusal to engage in the interactive process with Ms. Jones in good faith. Mr. Leloup's actions violated the ADA and are a form of discrimination against Ms. Jones based on her disability.

128. Defendant's actions in refusing to provide her a reasonable accommodation because of her disability or perceived disability were reckless, willful, and malicious.

129. Defendant's actions in refusing to engage in the interactive process in good faith were reckless, willful, and malicious.

130. As a direct and proximate result of Defendant's actions, Plaintiff has suffered a loss of employment, loss of compensation, loss of privileges and benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, and damage to her professional reputation. Plaintiff has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Plaintiff, NATALIA JONES, demands entry of a Final Judgment against Defendant for the following:

A.   An award of Back Pay damages;

B.      An award of Front Pay damages;

C.      Compensatory Damages for mental anguish, loss of enjoyment of life, and humiliation;

D.      Prejudgment interest;

E.      An award of Punitive damages;

F.      Reasonable attorney's fees and costs; and

G.      All such other relief as the Court deems just, equitable and appropriate.

**<u>COUNT VIII</u>**
**Violation of the ADA**
**Discrimination Resulting in**
**Adverse Employment Action**
**On the Basis of Disability**

131.    Plaintiff, NATALIA JONES, incorporates by reference the allegations set forth in paragraphs one (1) through ten (10) and paragraphs forty-four (44) through fifty-five (55) as if set forth herein in full.

132.    The Americans with Disabilities Act, 42 U.S.C. §12101, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based on that person's disability or perceived disability.

133.    During her employment with Defendant, Ms. Jones suffered from Post Traumatic Stress Disorder.

134.    Plaintiff is a member of a protected class and protected by the ADA from discrimination based on her disability or perceived disability.

135.    Defendant is an "employer" within the meaning of the ADA during the time of these allegations.

136. Defendant knew that Ms. Jones suffered from PTSD.

137. Plaintiff has satisfied all procedural and administrative requirements set forth in the ADA.

138. Ms. Jones was qualified for her job and was able to perform all essential functions of her job.

139. On May 7, 2025, Defendant terminated Ms. Jones from her position because of her disability or perceived disability.

140. Defendant's actions in terminating Ms. Jones because of her disability were reckless, willful, and malicious.

141. As a direct and proximate result of Defendant's actions, Plaintiff has suffered a loss of employment, loss of compensation, loss of privileges and benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, and damage to her professional reputation. Plaintiff has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Plaintiff, NATALIA JONES, demands entry of a Final Judgment against Defendant for the following:

A.    An award of Back Pay damages;

B.    An award of Front Pay damages;

C.    Compensatory Damages for mental anguish, loss of enjoyment of life, and humiliation;

D.    Prejudgment interest;

E.    An award of Punitive damages;

F.      Reasonable attorney's fees and costs; and

G.      All such other relief as the Court deems just, equitable and appropriate.

## COUNT IX
### Violation of the ADA
### Retaliation for Engagement in Protected Activity
### Resulting in Adverse Employment Action
### On the Basis of Disability

142.    Plaintiff, NATALIA JONES, incorporates by reference the allegations set forth in paragraphs one (1) through ten (10) and paragraphs forty-four (44) through fifty-five (55) as if set forth herein in full.

143.    Plaintiff is a member of a protected class under the ADA.

144.    Plaintiff engaged in protected activity under the ADA when she requested an extension as an accommodation to submit a statement five business days after a deadline imposed by Mr. Leloup.

145.    Defendant retaliated against Ms. Jones for engaging in a protected activity under the ADA by terminating Ms. Jones after she requested a reasonable accommodation to submit a statement five business days after the deadline.

146.    Defendant's actions were reckless, willful and done with malice.

147.    As a direct, proximate and foreseeable result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, loss of benefits, inconvenience, embarrassment, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other tangible and intangible damages. These damages have occurred in the past, are permanent and continuing.

**WHEREFORE**, Plaintiff, NATALIA JONES, demands entry of a Final Judgment against Defendant for the following:

A.   An award of Back Pay damages;

B.   An award of Front Pay damages;

C.   Compensatory Damages for mental anguish, loss of enjoyment of life, and humiliation;

D.   Prejudgment interest;

E.   An award of Punitive damages;

F.   Reasonable attorney's fees and costs; and

G.   All such other relief as the Court deems just, equitable and appropriate.

**COUNT X**
**Violation of the FCRA**
**For Failure to Provide a Reasonable Accommodation**
**& Engage in the Interactive Process in Good Faith**

148.   Plaintiff, NATALIA JONES, incorporates by reference the allegations set forth in paragraphs one (1) through ten (10) and paragraphs forty-four (44) through fifty-five (55) as if set forth herein in full.

149.   The Florida Civil Rights Act of 1992, Fla. Stat. § 760.01, et seq. ("FCRA") makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based on that person's disability.

150.   The FCRA closely mirrors the language of the ADA with respect to unlawful discrimination based on a person's disability.

151. Employers are required to grant reasonable accommodations to the known mental or physical limitations of an otherwise qualified employee unless the employer can show the accommodation would impose an undue hardship on the operation of its business.

152. When an employee requests an accommodation, this triggers an interactive process to determine the appropriate accommodation in which the employee and employer must participate.

153. An employer's failure to engage in the interactive process in good faith is liable for disability discrimination when there is a breakdown in communication that blocks or delays an accommodation.

154. During her employment with Defendant, Ms. Jones suffered from Post Traumatic Stress Disorder.

155. Plaintiff is a member of a protected class and protected by the FCRA from discrimination based on her disability or perceived disability.

156. Defendant is an "employer" within the meaning of the FCRA during the time of these allegations.

157. Plaintiff has satisfied all procedural and administrative requirements set forth in the FCRA.

158. Ms. Jones was qualified for her job and was able to perform all essential functions of her job.

159. Defendant failed to provide a reasonable accommodation and failed to engage in the interactive process in good faith, thus leading to Ms. Jones' termination.

160.    The discriminatory conduct described herein demonstrates Mr. Leloup's failure to provide Ms. Jones with a reasonable accommodation and his refusal to engage in the interactive process with Ms. Jones in good faith. Mr. Leloup's actions violated the FCRA and are a form of discrimination against Ms. Jones based on her disability.

161.    Defendant's actions in refusing to provide her a reasonable accommodation because of her disability or perceived disability were reckless, willful, and malicious.

162.    Defendant's actions in refusing to engage in the interactive process in good faith were reckless, willful, and malicious.

163.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered a loss of employment, loss of compensation, loss of privileges and benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, and damage to her professional reputation. Plaintiff has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Plaintiff, NATALIA JONES, demands entry of a Final Judgment against Defendant for the following:

A.    An award of Back Pay damages;

B.    An award of Front Pay damages;

C.    Compensatory Damages for mental anguish, loss of enjoyment of life, and humiliation;

D.    Prejudgment interest;

27

E.    An award of Punitive damages;

F.    Reasonable attorney's fees and costs; and

G.    All such other relief as the Court deems just, equitable and appropriate.

## COUNT XI
### Violation of the FCRA
### Discrimination Resulting in
### Adverse Employment Action
### On the Basis of Disability

164.    Plaintiff, NATALIA JONES, incorporates by reference the allegations set forth in paragraphs one (1) through ten (10) and paragraphs forty-four (44) through fifty-five (55) as if set forth herein in full.

165.    The Florida Civil Rights Act of 1992, Fla. Stat. § 760.01, et seq. ("FCRA") makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based on that person's disability.

166.    During her employment with Defendant, Ms. Jones suffered from Post Traumatic Stress Disorder.

167.    Plaintiff is a member of a protected class and protected by the FCRA from discrimination based on her disability or perceived disability.

168.    Defendant is an "employer" within the meaning of the FCRA during the time of these allegations.

169.    Defendant knew Plaintiff suffered from PTSD.

170.    Plaintiff has satisfied all procedural and administrative requirements set forth in the FCRA.

171. Ms. Jones was qualified for her job and was able to perform all essential functions of her job.

172. On May 7, 2025, Defendant terminated Ms. Jones from her position because of her disability or perceived disability.

173. Defendant's actions in terminating Ms. Jones because of her disability were reckless, willful, and malicious.

174. As a direct and proximate result of Defendant's actions, Plaintiff has suffered a loss of employment, loss of compensation, loss of privileges and benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, and damage to her professional reputation. Plaintiff has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Plaintiff, NATALIA JONES, demands entry of a Final Judgment against Defendant for the following:

A. An award of Back Pay damages;

B. An award of Front Pay damages;

C. Compensatory Damages for mental anguish, loss of enjoyment of life, and humiliation;

D. Prejudgment interest;

E. An award of Punitive damages;

F. Reasonable attorney's fees and costs; and

G. All such other relief as the Court deems just, equitable and appropriate.

## COUNT XII
### Violation of the FCRA
### Retaliation for Engagement in a Protected Activity
### Resulting in Adverse Employment Action
### On the Basis of Disability

175. Plaintiff, NATALIA JONES, incorporates by reference the allegations set forth in paragraphs one (1) through ten (10) and paragraphs forty-four (44) through fifty-five (55) as if set forth herein in full.

176. The Florida Civil Rights Act of 1992, Fla. Stat. § 760.01, et al. ("FCRA") makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based on that person's engagement in a protected activity.

177. Plaintiff is a member of a protected class under the FCRA.

178. Plaintiff engaged in protected activity under the ADA when she requested an extension as an accommodation to submit a statement five business days after a deadline imposed by Mr. Leloup.

179. Defendant retaliated against Ms. Jones for engaging in a protected activity under the ADA by terminating Ms. Jones after she requested a reasonable accommodation to submit a statement five business days after the deadline.

180. Defendant's actions were reckless, willful and done with malice.

181. As a direct, proximate and foreseeable result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, loss of benefits, inconvenience, embarrassment, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with

30

lost back and front pay, interest on pay, bonuses, and other tangible and intangible damages. These damages have occurred in the past, are permanent and continuing.

**WHEREFORE**, Plaintiff, NATALIA JONES, demands entry of a Final Judgment against Defendant for the following:

A.      An award of Back Pay damages;

B.      An award of Front Pay damages;

C.      Compensatory Damages for mental anguish, loss of enjoyment of life, and humiliation;

D.      Prejudgment interest;

E.      An award of Punitive damages;

F.      Reasonable attorney's fees and costs; and

G.      All such other relief as the Court deems just, equitable and appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Dated this 12th day of May, 2026.

/s/ *Gary L Printy, Jr, Esq*
**Gary L. Printy, Jr**
Florida Bar No. 41956
The Printy Law Firm
5407 N. Florida Ave
Tampa, Florida 33604
Telephone (813) 434-0649
FAX (813) 423-6543
garyjr@printylawfirm.com
e-service@printylawfirm.com
*Lead Counsel for Plaintiff*

31